

FILED

7/10/2026

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

MAM

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

NARAIN GULABANI

Case No.

1:26-cr-00380
Judge Matthew F. Kennelly
Magistrate Jeannice W. Appenteng
RANDOM / Cat. 5

Violation: Title 18, United States Code,
Sections 545 and 2

**INFORMATION**

The UNITED STATES ATTORNEY charges:

1.     At times material to this information:

### *Defendant and Relevant Entities*

a.     Defendant NARAIN GULABANI owned and operated Barkha Wholesale, Inc. ("Barkha"), an Illinois corporation and registered importer of record of gold jewelry into the United States that was located in Naperville, Illinois. Barkha was primarily a wholesale importer that imported gold jewelry for itself and other wholesale gold jewelers and also sold gold jewelry to retail stores throughout the United States.

b.     Indian Manufacturer A, Indian Manufacturer B, Indian Manufacturer and Retailer C, Indian Manufacturer D, Indian Manufacturer and Retailer E, and United Arab Emirates Manufacturer A were located in India and the United Arab Emirates ("UAE"), respectively, and manufactured, exported, and sold gold jewelry to customers in the United States, including Barkha. Indian Manufacturer and Retailer C, and Indian Manufacturer and Retailer E also operated retail stores that sold gold jewelry in the United States, including Illinois.

c. United Arab Emirates Company A and United Arab Emirates Company B were located in the UAE and facilitated the shipment of India-origin and UAE-origin gold jewelry into the United States for GULABANI.

d. Omani Individual A resided in Oman. Omani Individual A worked in Oman at the direction of United Arab Emirates Company B and received compensation from United Arab Emirates Company B.

e. Company A was a wholesaler and registered importer of record of gold jewelry into the United States that was located in South San Francisco, California. Company A was owned and operated by Individual A and Individual B. Company A imported gold jewelry for itself and other wholesalers, including Barkha.

f. Customs Broker B, located in the Northern District of Illinois, Eastern Division, was hired by GULABANI to submit customs paperwork to United States Customs and Border Protection ("CBP") on behalf of Barkha. Customs Broker B submitted customs paperwork to CBP from the Northern District of Illinois.

### *Entry of Goods into the United States*

g. CBP was an agency within the United States Department of Homeland Security. CBP was responsible for, among other things, the examination of goods entering the United States to ensure that they were admissible and in compliance with United States laws, and the assessment and collection of taxes, fees, and duties on imported goods.

h. To import goods into the United States, the importer was required to file "entry" documents with CBP providing specific information relating to the

imported goods. These entry documents could be submitted electronically through the Automated Commercial Environment (ACE), a web-based system. Entry documents included Entry Summaries (CBP Forms 7501), manifests, and supporting documentation, generally provided by the exporter, including invoices, air waybills, and packing lists. Importers were required to provide specific and truthful information relating to imported goods, including a description of the goods and the goods' manufacturer, value, and country of origin.

i.     A customs broker or agent normally handled the process of entering goods into the United States on behalf of an importer, which included the filing of entry documents with CBP based on information provided by the importer.

j.     Information in entry documents concerning the country of origin of the imported goods was material to CBP's assessment of any duties owed for the goods.

### Duties for Gold Jewelry

k.     Certain gold jewelry from the Sultanate of Oman and the Republic of Singapore was eligible for duty-free treatment under the United States–Oman Free Trade Agreement (the "OFTA") and the United States–Singapore Free Trade Agreement (the "SGFTA"), respectively. Generally, to qualify for duty-free treatment, gold jewelry must have been wholly the growth, product, or manufacture of Oman, Singapore, or the United States, or both the United States and Oman or Singapore; or must have become a new or different article of commerce that was grown, produced, or manufactured in Oman, Singapore, or the United States, or both the United States and Oman or Singapore (such as gold and alloy that was

manufactured into gold jewelry in Oman). The United States did not assess customs duties for gold jewelry meeting OFTA or SGFTA qualifications that was imported into the United States.

l.      Gold jewelry originating from India and the UAE was not eligible for duty-free treatment. If gold jewelry from India or the UAE was imported into the United States, the importer was required to pay a customs duty of between 5.5% and 5.8% of the declared value of the imported goods, with the exact percentage depending on the type of gold jewelry being imported.

### Smuggling of Goods Into the United States Contrary to Law and Pursuant to a Fraudulent Practice

m.      GULABANI fraudulently imported and brought into the United States India-origin and UAE-origin gold jewelry and avoided the payment of duties on that jewelry by falsely declaring that the gold jewelry originated in Oman.

n.      To avoid the assessment of duties by the United States, GULABANI purchased India-origin and UAE-origin gold jewelry from Indian Manufacturer A, Indian Manufacturer B, Indian Manufacturer and Retailer C, Indian Manufacturer D, Indian Manufacturer and Retailer E, United Arab Emirates Manufacturer A, and other Indian and UAE manufacturers.  In purchasing India-origin and UAE-origin gold jewelry from these entities, GULABANI understood that the jewelry would first be shipped to companies located in the UAE, namely, UAE Company A and UAE Company B, prior to exporting the gold jewelry to the United States.

o. At GULABANI's request, prior to exporting the gold jewelry to the United States, Omani Individual A, UAE Company A, and UAE Company B created false documentation for the gold jewelry to support a false country-of-origin designation of Oman for the gold jewelry.

p. GULABANI obtained and caused to be created false invoices listing companies located in Oman ("the Oman Companies") as the manufacturers of the gold jewelry obtained from India and the UAE, knowing that the Oman Companies had not manufactured the gold jewelry.

q. GULABANI knew that UAE Company A and UAE Company B created and caused false country-of-origin information, false documents, and related records to further the scheme. GULABANI and others then submitted these false documents to Customs Broker B to file CBP entries on Barkha's behalf, including CBP entry Form 7501, supporting the importation of Indian- and UAE-origin gold jewelry into the United States as products of Oman, despite knowing the country-of-origin information was false.

r. GULABANI, acting in concert with others, impeded, impaired, obstructed, and defeated the lawful government functions of the CBP in the ascertainment, assessment, and collection of duties owed on imported gold jewelry manufactured in and originating from India and the UAE.

s. GULABANI took physical and administrative custody of the India-origin and UAE-origin gold jewelry imports that had been falsely declared as having originated in Oman after that gold jewelry entered the United States.

t. Beginning no later than approximately May 5, 2016, and continuing until at least approximately October 22, 2021, GULABANI, on behalf of Barkha, imported and brought into the United States approximately 215 separate entries of India-origin and UAE-origin gold jewelry that had been falsely declared as having originated in Oman, with an estimated total entered value of approximately $208,898,020, and thus caused the avoidance of duties and related fees that should have been imposed on that jewelry in the amount of approximately $11,730,508.48.

u. On approximately 27 occasions between approximately November 4, 2021 and approximately April 28, 2022, GULABANI also caused Company A to import India-origin and UAE-origin gold jewelry on behalf of Barkha that was falsely designated with a country-of-origin of Singapore. In total, Company A imported on behalf of Barkha India-origin and UAE-origin gold jewelry that had been falsely declared as having originated in Singapore having an estimated total entered value of approximately $31,964,916.83, resulting in the avoidance of duties that should have been imposed on that gold jewelry in the amount of approximately $1,869,547.51.

v. In total, GULABANI imported through Barkha, or caused to be imported by Company A, India-origin and UAE-origin gold jewelry that had been falsely declared as having originated in Oman or Singapore, with an estimated total entered value of approximately $240,862,936.83, and thus caused the avoidance of duties and related fees that should have been imposed on that jewelry in the amount of approximately $13,600,055.99.

6

2.      On or about April 8, 2021, in the Northern District of Illinois, Eastern Division and elsewhere,

NARAIN GULABANI,

defendant herein, imported gold jewelry originating from Indian Manufacturer and Retailer E with a declared value of approximately $783,866.74, knowing the same to have been imported and brought into the United States contrary to law, namely, as part of a fraudulent practice in violation of Title 18, United States Code, Section 542, in that the India-origin gold jewelry was falsely declared on CBP entry BFH-2102063-8 to have originated from Oman in avoidance of U.S.-imposed customs duties, thereby causing loss to the United States of approximately $43,427.67;

In violation of Title 18, United States Code, Sections 545 and 2.

_____
UNITED STATES ATTORNEY